IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | |
|---|---|
| ELLIS TURNAGE, Administrator of the Estate of Mareco Fashawn Ragsdale, deceased | PLAINTIFF |
| VS. | CIVIL ACTION NO. 3:06CV103WA |
| RANKIN COUNTY, MISSISSIPPI; RONNIE PENNINGTON, Individually and in his oficial capacity as Sheriff of Rankin County, MS; KEN DICKERSON, Individually and in his official capacity as Sheriff of Rankin County, MS; EDDIE THOMPSON, Individually and in his official capacity as Jail Captain; RONNIE ANDREWS, Individually and in his official capacity as Jail Lieutenant; MARCIA GARDNER, Individually and in her official capacity as Jail Sergeant; DAVID PARKER, Individually and in his official capacity as a Jailer; JOHN RENFRO, Individually and in his official capacity as a Jailer; AGNES SMITH, Individually and in his official capacity as a Jailer; SANTELL EASTERLING, Individually and in his official capacity as a Jailer; and JAMES REDD, Individually and in his official capacity as a Jailer | DEFENDANTS |

## MEMORANDUM OPINION AND ORDER

This matter came before the court on the Defendants' Motion for Summary Judgment [Docket # 19], as well as motions related to the timeliness of the responsive pleadings. The court earlier granted the Plaintiff's Motion for an Extension of Time to Respond to the Motion for Summary Judgment [Docket # 21]; therefore, the Motion to Strike the Response to Motion for Summary Judgment [Docket # 26] must be denied. The other pending motions [Docket #'s 30, 27] relate to the filing of affidavits supporting the plaintiff's response. One of those affidavits, that of Dr. Rodrigo Galvez, was filed within the time frame already granted by the court. The other, the affidavit of Charles

Perkins, was filed shortly thereafter. Finding no prejudice or undue delay resulting from the submission of these affidavits, the court will also deny the Motion to Strike Dr. Galvez's Affidavit [Docket # 30], grant the Motion for Extension of Time to File Perkins's Affidavit [Docket # 27], and proceed to consider the merits of the Motion for Summary Judgment.[1]

## Jurisdiction

This court has original subject matter jurisdiction over this matter pursuant to Title 28 U.S.C. § 1343[2] and Title 42 U.S.C. §§ 1983[3] and 1988.[4] When faced with civil rights claims such as these, this court applies federal law pursuant to Title 28 U.S.C.

---

[1] The Fifth Circuit has held that failure to permit a prisoner to supplement his material in opposition to a motion for summary judgment can be an abuse of discretion. *Ayers v. Peterson*, 130 Fed. Appx. 666, 679 (5th Cir. 2005). For that reason, the court has also considered exhibits that were discussed in the Plaintiff's response to the Motion for Summary Judgment, but only recently filed with the court.

[2] Title 28 U.S.C. § 1343 provides: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

[3] Title 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

[4] Title 42 U.S.C. § 1988(b) provides in pertinent part that, "any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, ... title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, ... ."

§ 1343 (3) which in pertinent part grants this federal district court original jurisdiction over any civil action arising from a deprivation or conspiracy under color of state law to violate a citizen's Constitutional right or a Congressional Act providing for equal rights of persons within the United States jurisdiction. The plaintiff's complaint asserts constitutional violations under the Fourth and Fourteenth Amendments to the Constitution of the United States.[5]

### Facts

The case arises from the death of Moreco Fashawn Ragsdale, who was detained in the Rankin County, Mississippi, Jail from August, 2002, to March, 2003, pending a trial on drug charges. The plaintiff, who is the Administrator of Ragsdale's estate, alleges that Ragsdale died as the result of an assault that occurred during Ragsdale's incarceration. According to the Affidavit of Charles Perkins, who was Ragsdale's cell-mate, inmates at the jail were not provided enough to eat, so they gambled among themselves for food. This practice, which involved card games, allegedly was well known to, and allowed by, jailers.

---

[5]The Fourth Amendment to the Constitution of the United States provides that, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fourteenth Amendment to the Constitution of the United States, Section I, provides that, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

During one February 17, 2003, card game, another inmate, Alvin McLaurin, punched Ragsdale in the face. After the incident, Ragsdale had a nosebleed that continued for some time. Perkins stated that Ragsdale complained several times after the incident about severe headaches and sinus pain, and defendant Easterling provided him aspirin. Perkins also stated that Ragsdale began to have dizzy spells, about which he complained to defendants Easterling, Redd, Smith and Gardner. Ragsdale was never examined by medical personnel, although, according to Perkins, Ragsdale submitted two or more written request forms for medical care.

On March 4 and 5, 2003, Perkins said that Ragsdale complained of severe headaches and dizziness and, by the morning of the 5th, he could barely get out of bed. He began to lose consciousness and returned to his bed without eating breakfast. At about 6:30 that morning, inmates carried him from his cell to the hallway of the tower of the jail. According to Perkins, a lock-down was then ordered, and the inmates had to return to their cells. At around 7:15, two trustees and defendant Renfro brought Ragsdale back to his cell and laid him on the floor. As he lay there, Ragsdale began to vomit and laid in his vomit for thirty to forty minutes. When inmates once again called for help from the officers, the officers came to Ragsdale's cell with a wheelchair and transported him from the area.

Defendant Redd filled out an Incident Report that stated that Ragsdale had come to the tower that morning and had asked for medication, but had been instructed to return to his cell. He confirmed that inmates brought Ragsdale into the hallway, but says that they did it at his request. After Ragsdale was brought out, Redd stated that the nurse immediately was summoned to the unit. Defendant Renfro confirmed in

4

another Incident Report that Ragsdale was lying on the floor when he first saw him on that date.  Defendant Thompson's Incident Report states that he was initially informed that Ragsdale was unconscious in his cell.  After Redd and some trusties got him from the cell to the hall area, the nurse arrived, and she was with him when he began to vomit.  They brought Ragsdale to the nurse's station, but could not wake him up.  At that point, they decided to transport him to the Rankin Medical Center's emergency room.

Records from the Rankin County, Mississippi, Medical Center show that Ragsdale was ambulatory, but not responsive to stimuli, when he arrived there at 8:25 a.m.  His pupils were pinpoint and non-reactive. Doctors intubated Ragsdale and ordered a CT scan to be peformed.  That scan revealed "a hemorrhagic intracerebral event with hemorrhage in the lateral ventricles about the brain stem and mid grain with considerable mass effect in the thalamic area on the left."  The diagnosis was intracerebral hemorrhage, most likely caused by a vascular anomaly.  Ragsdale was transferred to the University Medical Center ("UMC") for a neurosurgical evaluation.

On arrival at UMC, Ragsdale was described as comatose, as the result of an intracranial hemorrhage.  During transport, his right pupil has gone from pinpoint to fixed and dilated; and both pupils had become bilaterally fixed shortly after arrival.  Once treated at the neurological intensive care unit, Ragsdale's condition had improved slightly, and the treating physician had recommended continued treatment to determine whether further improvement was possible.

By mid-March, Ragsdale had a "stable neurological exam" and was transferred from the Neuro ICU to the floor.  Additional radiological studies were performed in late

5

March, which indicated an arteriovenous malformation (AVM) in the brain, or, possibly, an aneurysm.  On March 31, Ragsdale's blood pressure and respiratory rate dropped, and he was sent back to the Neuro ICU.  Despite surgery to relieve intracranial pressure, it continued to rise.  On the afternoon of April 1, his doctor performed an apnea test, which revealed no brain stem function, and a physical exam revealed no brain stem reflexes.  Ragsdale was pronounced dead at that time.

Rankin County officials requested that Dr. Steven T. Hayne perform an autopsy on Ragsdale the next day.  Upon examining his brain, Dr. Hayne noted severe cerebral edema.  He identified a hemorrhagic lesion of the basal ganglia, measuring twelve centimeters, which was brown and necrotic. The lesion was identified as a tumor, and a microscopic analysis caused Dr. Hayne to conclude that it was a high grade malignant neoplasm "consistent with astrocytoma vs. glioblastoma."  Dr. Hayne concluded that the immediate cause of death was tumor "of the basil ganglia consistent with high grade glio-tumor," with an underlying cause of death being cerebral edema.  Dr. Hayne also concluded that Ragsdale had died of natural causes.

## Plaintiff's Complaint

The Plaintiff Administrator claims that Rankin County officials failed to protect Ragsdale from assault by McLaurin, who was a convicted felon, because they did not have a policy of segregating pretrial detainees from convicted inmates.  The Administrator also contends that the jail was inadequately staffed for the number of prisoners incarcerated there, creating a situation where prisoners were not adequately monitored.  The Complaint also alleges that officials were aware that prisoners were not adequately fed, and that they were also aware that prisoners gambled for food.  Finally,

6

the Administrator claims that the individual defendants failed to protect Ragsdale and were deliberately indifferent to his medical needs after he was assaulted. The defendants have moved for summary judgment on these claims.

## Summary Judgment Standard

Summary judgment is only appropriate where the pleadings, discovery materials (if any) and affidavits, viewed in the light most favorable to the non-movant, show that there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). Once the movant has produced such evidence, the non-movant "must put forth specific facts that demonstrate a genuine factual issue for trial." *Brennan v. Mercedes Benz*, 388 F.3d 133, 134 (5th Cir. 2004). A mere scintilla of evidence will be insufficient to preclude summary judgment; there must be sufficient evidence on which a factfinder could find for the plaintiff. *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

## Constitutional Law

Section 1983 prohibits the deprivation of constitutional rights under color of state law. As the United States Supreme Court has taught, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[6] *Helling v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 125 L.Ed.2d 22. That amendment requires prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128

---

[6]The Eighth Amendment to the Constitution of the United States provides that, "[e]xcessive bail shall not be required nor excessive fines imposed, nor cruel and unusual punishments inflicted."

L.Ed.2d 811 (1994).   A complaint of unconstitutional conditions requires an inquiry into the state of mind of the defendant prison officials.  *Wilson v. Seiter*, 501 U.S. 294, 300-02, 111 S.Ct. 2321, 115 L.Ed.2d 271.

To prevail in a case involving conditions of confinement, a plaintiff must prove the following twofold elements: (1) an objective component, under which the inmate must prove his exposure to a harm or injury that violates contemporaneous standards of decency; and (2) a subjective component, under which the inmate must prove that the prison authorities' conduct evidences a deliberate indifference to that exposure. *Helling*, 509 U.S. at 35-36; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002). In other words, under the objective component, the deprivation alleged must be "sufficiently serious," resulting in "a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.  Under the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837.

In defense, prison officials may show that they did not know of the indications of substantial danger and, therefore, were unaware of the danger, or that they knew the indications, but believed that the risk involved was "insubstantial or nonexistent," or that they "responded reasonably to the risk, even if the harm ultimately was not adverted." *Id*. at 844-45.

## **Analysis**

The defendants have moved for summary judgment on grounds that the Plaintiff Administrator has failed adequately to demonstrate any genuine issue of material fact

as to whether Ragsdale's constitutional rights were violated, either by the actions of the individual defendants, or by any custom or policy of county officials.  In particular, they argue that jail employees were adequately trained and supervised, that food service was adequate, that Ragsdale was housed with other pre-trial detainees and not convicted felons, and that they had no knowledge that Ragsdale was suffering from a serious medical condition prior to March 5, 2003.  The defendants submit that no report of an altercation between Ragsdale and another inmate exists, nor is there any record that he sought medical care.  Finally, the defendants argue that the finding by Dr. Hayne that Ragsdale died of natural causes, as the result of a brain tumor, demonstrates that nothing that occurred at the Rankin County Jail could have been the proximate cause of his death.

In response, plaintiff has produced the affidavit of Ragsdale's cellmate, Charles Perkins, that refutes many of the factual claims made by the defendants.  Perkins states that Ragsdale was assaulted by McLaurin, a convicted felon, who was housed with them.  Perkins details the housing arrangement of the West Tower, where he and Ragsdale were incarcerated, and describes it as containing up to ninety-six inmates, staffed by three male jailers and one female jailer, who worked twelve hour shifts.  Perkins says that the meals served to the inmates were insufficient, leading to the inmates' gambling for food, an activity which was known by the jailers.  He describes the assault on Ragsdale, Ragsdale's subsequent medical complaints and requests for care, and his collapse on March 5.

The plaintiff also has submitted an affidavit from Dr. Rodrigo Galvez, a forensic pathologist, who has examined Ragsdale's medical records and the autopsy report.  Dr.

9

Galvez has concluded that the cause of Ragsdale's death was a hemorrhagic intracerebral event, resulting from the trauma that Ragsdale sustained on February 17, 2003, when McLaurin struck him in the face, rather than a cancerous tumor.  Dr. Galvez believes that Ragsdale's symptoms were consistent with this diagnosis.  He also stated, "[I]f Moreco F. Ragsdale had been provided medical care 24 to 48 hours earlier, he would have survived."

At this juncture, the court concludes that the plaintiff has submitted sufficient evidence to establish genuine issues of material fact as to the conditions of the jail, the failure to provide constitutionally adequate medical treatment, and Ragsdale's cause of death.  These are all material issues relevant to the determination of whether Ragsdale died as the result of being incarcerated under conditions that violated the Eighth Amendment.  For that reason, this court is persuaded that summary judgment is not appropriate at this time, and the defendants' motion for such must be denied.

IT IS, THEREFORE, ORDERED that the Defendants' Motion for Summary Judgment [Docket # 19] is hereby **denied**.

IT IS FURTHER ORDERED that the Defendants' Motion to Strike Response to Motion for Summary Judgment [Docket # 26] and Motion to Strike Affidavit of Rodrigo M. Galvez, M.D. [Docket # 30] are hereby **denied**.

IT IS FINALLY ORDERED that the Motion for Extension of Time to File Affidavit of Charles Perkins [Docket # 27] is hereby **granted**.

This the 5th day of March, 2008.

                          **s/ HENRY T. WINGATE**
                          **CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:06-cv-103 HTW-LRA